**Dora H. VANDUSEN, Plaintiff,**

v.

**J. C. PENNEY COMPANY, Defendant.**

**No. 876.**

United States District Court
W. D. Arkansas,
Hot Springs Division.

Aug. 21, 1962.

Ben J. Harrison, Hot Springs, Ark., John T. Haskins, Little Rock, Ark., for plaintiff.

Wootton, Land & Matthews, Hot Springs, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This matter is before the court on defendant's motion to transfer this cause of action to the United States District Court for the District of Arizona, sitting at Phoenix, in accordance with 28 U.S.C.A. § 1404(a).

On April 2, 1962, the plaintiff filed her complaint in the Garland County Circuit Court. Summons was served on defendant, J. C. Penney Co., on April 4, 1962, and the defendant's petition for removal to this court was filed April 23, 1962.

In paragraph numbered I of the complaint the plaintiff alleged:

"On or about the 12th day of April, 1960, the plaintiff was shopping in one of the retail department stores of the defendant in the City of Mesa, Arizona. As the plaintiff approached one of the display counters of the defendant, she stepped on a slippery cellophane wrapper together with dirt, sand and other debris which caused her to fall violently to the floor. As a result of this fall, caused by the negligence of the defendant, the plaintiff has been seriously, painfully and permanently injured."

In paragraph numbered III the plaintiff alleged:

"The defendant was negligent at the time of the accident in permitting the said cellophane wrapper, dirt, sand, and other debris to remain on its floor and in failing to

cause the said debris to be removed when it knew, or should have known, in the exercise of due care, that said debris was a hazard to its business invitees walking through the aisles of its store."

Then followed allegations of the various personal injuries which the plaintiff claims that she received at the time, and that said personal injuries were proximately caused by the negligence of the defendant.

On April 23, 1962, the date on which the petition for removal was filed, the defendant filed its answer and denied the allegations contained in paragraph I as above set forth, and specifically denied that it was guilty of any negligence, or that the plaintiff fell as alleged and that she received any personal injuries as a result of a fall in the store of defendant located in Mesa, Arizona, or any other place.

In the motion to transfer, the defendant alleged that on April 12, 1960, it was and is now operating a store in the City of Mesa, Arizona; that on the date the plaintiff claims she received the injury she was a resident of Maricopa County, Arizona, and resided at 1757 East Second Street in the City of Mesa; that the defendant is subject to a suit in the United States District Court for the District of Arizona, sitting at Phoenix.

The motion by reference included the discovery depositions of the plaintiff and her husband, Raymond Elmer Vandusen, taken on June 13, 1962, in Hot Springs, Arkansas. Attached to the motion are the affidavits of nine employees of the defendant, all of whom stated under oath that they did not see the plaintiff fall; did not personally know her; and that, in fact, no one fell in the store on or about April 12, 1960. In other words, all nine of the employees have sworn that no accident involving any customer or any other person in the store was witnessed by any of them during the month of April, 1960.

In the affidavit of Elton C. Hussey, who was on April 12, 1960, manager of the store, and had been for eleven years,

it is stated that he was not present in the store on April 12, 1960; that he was away from March 30, 1960, to May 1, 1960, on a trip to Japan.

Mr. Hussey further states:

"That on or about November 11, 1961, upon receipt of a letter from plaintiff's attorney concerning the alleged accident, he immediately questioned employees who were employed during the month of April, 1960, and all persons so questioned denied any knowledge of any person by the name of Dora H. Vandusen, or any knowledge of any customer having a fall or other accident during the month of April, 1960;"

The plaintiff opposes the motion to transfer on the ground that she is still suffering severe pain and discomfort "from the effects of the injury received on defendant's business premises in Mesa, Arizona, and to require her to journey to Mesa, Arizona, would aggravate her suffering; that her husband, Raymond Vandusen, who witnessed the accident herein, is employed at Radio Station KAJI, Little Rock, Arkansas, and subject to twenty-four (24) hour call six days a week, would have to accompany her to care for and assist her; that if it becomes necessary for her husband to make an extended trip to Arizona it will result in great hardship or possibly loss of his employment; that if such loss of employment should ensue plaintiff would lose her only reliable means of support since she is not able to fully support herself since the injury received on defendant's premises in Mesa, Arizona."

The plaintiff and her husband were both born and reared in Arkansas and resided in the state until October 10, 1959, when the plaintiff, accompanied by her husband, went to Mesa, Arizona, where her husband accepted employment as chief engineer at Radio Station KBUZ. For the first few months after they arrived at Mesa, they lived with a brother of plaintiff but later purchased a home. In December, 1959, the plaintiff returned to Arkansas, to look after the home they

owned in or near the City of Hot Springs. She made some arrangements concerning the home and paid the taxes and returned to Mesa on March 1, 1960. The plaintiff claims that on April 12, 1960, she, accompanied by her husband, went to the store of the defendant to purchase some sateen for quilt lining, and upon entering the store she fell and received the injuries now complained of. She remained in Mesa until July 17, 1960, when she returned to Hot Springs. Her husband continued to live in Mesa, Arizona, until October 15, 1960, when he returned to Hot Springs and obtained employment as chief engineer at Radio Station KAJI in Little Rock, Arkansas, in which occupation he is now engaged, and in order to discharge the duties of such employment he is required to live in Little Rock, where he has a room. The plaintiff continues to live in their home on Route 2, Box 638, Hot Springs, Arkansas.

Counsel for the parties have served and submitted briefs in support of their respective contentions. The defendant contends that under the admitted facts it is entitled to have the case transferred to the District of Arizona for trial in Phoenix, which city is located near Mesa where the injuries are alleged to have been received.

■ The doctrine of forum non conveniens did not originate in federal but in state courts. Nevertheless the federal courts, including the Supreme Court, recognize and approve the doctrine by name.

Gulf Oil Corp. v. Gilbert, (1947) 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, was decided before the enactment of 28 U.S.C.A. § 1404(a), and in the opinion the court said beginning at page 507 of 330 U.S., at page 842 of 67 S.Ct.:

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

"Many of the states have met misuse of venue by investing courts with a discretion to change the place of trial on various grounds, such as the convenience of witnesses and the ends of justice. The federal law contains no such express criteria to guide the district court in exercising its power. But the problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it.

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that

make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home."

Prior to the decision in Gulf Oil Corp. v. Gilbert, supra, the court in Williams v. Green Bay & Western Railroad Co., (1946) 326 U.S. 549, 66 S.Ct. 284, 90 L. Ed. 311, beginning on page 554 of 326 U.S., on page 286 of 66 S.Ct. said:

"We mention this phase of the matter to put the rule of forum non conveniens in proper perspective. It was designed as an 'instrument of justice.' Maintenance of a suit away from the domicile of the defendant—whether he be a corporation or an individual—might be vexatious or oppressive. An adventitious circumstance might land a case in one court when in fairness it should be tried in another. The re-

lief sought against a foreign corporation may be so extensive or call for such detailed and continuing supervision that the matter could be more efficiently handled nearer home. The limited territorial jurisdiction of the federal court might indeed make it difficult for it to make its decree effective. But where in this type of litigation only a money judgment is sought, the case normally is different."

Sec. 1404(a), supra, was enacted June 25, 1948, and on April 11, 1955, the court in Norwood v. Kirkpatrick, U. S. District Judge, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789, beginning at page 32 of 349 U.S., at page 546 of 75 S.Ct. said:

"When Congress adopted § 1404 (a), it intended to do more than just codify the existing law on forum non conveniens. As this Court said in Ex parte Collett, 337 U.S. 55–61, Congress, in writing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer. When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."

The defendant is a corporation organized under the laws of the State of Delaware and is authorized to, and is doing business, in the State of Arkansas as a foreign corporation. It maintains stores in many cities in the various states of the Union.

The plaintiff is a citizen of Arkansas.

The jurisdiction of the court is founded on diversity of citizenship and the amount involved.

Title 28 U.S.C.A. § 1391(a), provides:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all the plaintiffs or all the defendants reside."

Title 28 U.S.C.A. § 1332 (1961 Supp.), provides:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

"(1) citizens of different States."

In paragraph numbered 4 of the petition for removal the defendant alleged:

"Petitioner is a citizen and resident of the State of Delaware and does not have its principal place of business in the State of Arkansas."

In paragraph numbered 1 of the motion to transfer, the defendant alleged:

"That the purported accident upon which plaintiff's cause of action is based, is alleged to have occurred in the City of Mesa, Arizona; that said City of Mesa, Arizona, is located in Maricopa County, Arizona, and is within the jurisdiction of the United States District Court for the District of Arizona, sitting in Phoenix, the latter city being also located in Maricopa County, Arizona."

The defendant, while a citizen of the State of Delaware, was on April 12, 1960, and is now engaged in business in the District of Arizona. The plaintiff, as above stated, is a citizen of Arkansas. Therefore the suit "might have been brought" in Arizona but this court also has jurisdiction, and the suit was properly filed in this court by a citizen of Arkansas residing in the Hot Springs Division for the Western District of Arkansas against a corporate citizen of the State of Delaware.

In the brief the defendant quotes from the case of Richer v. Chicago, R. I. & P. R. Co., (E.D.Mo.1948) 80 F.Supp. 971, beginning at page 972, as follows:

"As to factors that should be given consideration in determining whether or not venue will be denied under the doctrine of forum non conveniens, the Supreme Court said in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 843, 91 L.Ed. 1055, that 'An interest to be considered, and the one likely to be most pressed, is' (1) 'private interest of the litigant'; (2) 'relative ease of access to sources of proof;' (3) 'availability of compulsory process for attendance of unwilling' witnesses; (4) 'cost of obtaining attendance of willing' witnesses; (5) 'possibility of view of premises, if view would be appropriate to the action;' (6) 'practical problems that make trial of a case easy, expeditious and inexpensive.' Among other practical problems posed by the Court was 'appropriateness * * * in having the trial of a diversity case in a forum that is at home with the state law that must govern the case * * '."

However, the defendant did not quote the following:

"The Court concludes, 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' "

In Calva v. American Air Lines, Inc., (D.Minn.1959) 177 F.Supp. 238, the court at page 239 said:

"The Supreme Court in Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789, established that the discretion to be exercised in transferring a case under section 1404(a) is broader than that to be exercised in dismissing a case under the doctrine of forum non conveniens. But even since Norwood, moving defendants are still required to show a strong balance of inconven-

ience in their favor before the court is justified in disturbing the plaintiff's choice of forum. Wilson v. Great Atlantic & Pacific Tea Co., D.C.W.D.Mo.1957, 156 F.Supp. 767; Chicopee Mfg. Corp. v. Kendall Co., D.C.W.D.S.C.1957, 154 F.Supp. 248; McKinney v. Southern Pac. Co., D.C. S.D.Tex.1957, 147 F.Supp. 954; National Tea Co. v. The Marseille, D.C. S.D.N.Y.1956, 142 F.Supp. 415."

In Grubs v. Consolidated Freightways, Inc., (D.Mont.1960), 189 F.Supp. 404, the court beginning on page 407 said:

"Prior to the enactment of section 1404(a) in 1948, the federal courts had no power to transfer an action to a more convenient court. Under the doctrine of forum non conveniens the only possible remedy was dismissal. While many of the relevant factors under the doctrine of forum non conveniens have not changed, the court has a broader discretion under section 1404(a). As the Supreme Court said in Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789, ' * * * we believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.' 349 U.S. at page 32, 75 S.Ct. at page 54.

"Although the district judge has a broader discretion in acting on motions to transfer, 'in exercising this discretion he is limited in his consideration to the three factors specifically mentioned in Sec. 1404(a), and he may not properly be governed in his decisions by any other factor or consideration', except that due consideration must be given to plaintiff's choice of forum. Nor may he consider one factor to the exclusion of the other two. The test 'in the interests of justice' includes, in addition to the convenience of the parties and witnesses, such criteria as the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises, if appropriate; the state of the court calendar in both districts; the burden of jury duty on people of a community having no relation to the litigation; the unnecessary injection of problems in conflict of laws; and all other practical problems which make the trial of a case easy, expeditious, and inexpensive."

In Dixie Cup Co. v. Paper Container Mfg. Co., (7 Cir. 1949) 174 F.2d 834, the court at page 836 defined judicial discretion, as follows:

"Judicial discretion, as we understand it, is impartial reasoning, guided and controlled in its exercise by fixed legal principles, requiring the court, in consideration of the facts and circumstances, to decide as its reason and conscience dictate; it requires that the court be discreet, just, circumspect and impartial, and that it exercise cautious judgment. The term connotes the opposite of caprice and arbitrary action."

Since the enactment of Sec. 1404(a), the discretion to be exercised is broader than formerly permitted but the relevant factors have not changed, nor should the court fail to consider the plaintiff's choice of forum. The statute provides, "(a) for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The three factors enumerated in the statute are broad enough to include all of the factors formerly considered before the enactment of the statute.

The defendant contends that all of its witnesses live in or near Mesa,

Arizona, and that it would be difficult and expensive, if not impossible, to procure their attendance at a trial in the Western District of Arkansas; that from the nature of the case it will be necessary for the defendant to produce all the employees who were in the store at the time the plaintiff claims she fell and suffered the injury now complained of. However, in determining the motion, the court must give due consideration to the selection of the forum by the plaintiff. She is a citizen of Arkansas and was only temporarily residing in Mesa, Arizona, at the time the fall complained of occurred. The defendant is a Delaware corporation, and it is common knowledge that it maintains stores in many different cities in the United States, and merely because expenses which the defendant would be required to incur to transport the witnesses to the Western District of Arkansas is not sufficient to show that in the interest of justice the motion to transfer should be granted. Of course, the substantive law of Arizona will govern the question of liability, but that in itself does not require the transfer of the case.

The affidavits of the plaintiff and her husband attached to the response to the motion are convincing that the court should, in the interest of justice, permit them to have a trial in the district of their residence.

Neither party makes any contention that the case could not be tried speedily in Arizona if it were transferred, but the Annual Report of the Director of the Administrative Office of the United States Courts (1961) discloses that on June 30, 1961, there were pending in the District of Arizona 563 civil cases, while in the Western District of Arkansas there were pending 115 private civil cases; that the median interval in the District of Arizona from filing to disposition of civil cases during the fiscal year ending June 30, 1961, was 12.7 months, while in the Western District of Arkansas the median time was 6.2 months.

In all probability, the median time of the disposition of cases in the District of Arizona will be reduced since there are now three resident United States District Judges in that District.

When all the facts are considered together, the court is convinced that, regardless of the merits of plaintiff's claim, she is entitled to a trial in the forum selected by her. Therefore, an order is being entered today overruling the motion to transfer.